1
2
3
4
5
6
7
8
9

FILED
CLERK. U.S. DISTRICT COURT

SEP 3 0 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  MILLENNIUM DENTAL                )
    TECHNOLOGIES, INC.,              )
14                                   )    CASE NO. CV 09-1792-R
                                     )
15              Plaintiff,           )
                                     )
16          vs.                      )    **FINDINGS OF FACT AND**
                                     )    **CONCLUSIONS OF LAW**
17  FOTONA d.d.,                     )
                                     )
18              Defendant.           )
                                     )
19  ─────────────────────────────── )

20          Defendant Fotona d.d ("Fotona") filed a Motion to Enforce Settlement (Docket No. 37)

21  ("Motion"), which came on regularly for hearing on June 7, 9 and 10, 2010.  The parties made

22  their appearances through counsel.  An evidentiary hearing was held.  The Court having reviewed

23  and considered the submissions of the parties, heard and considered the testimony and other

24  evidence presented at the hearing, and heard and considered the arguments presented at the

25  hearing, hereby GRANTS Defendant's Motion and makes the following findings:

26                          **FINDINGS OF FACT**

27  **A.    Pre-Settlement Discussions Between MDT and Fotona**

28          1.    Millennium Dental Technologies ("MDT") filed suit against Fotona d.d.

1          ("Fotona") on March 16, 2009, alleging infringement of United States Patent

2          No. 5,642,997 ("the '997 Patent").  (Dock. # 1)

3     2.   Following the filing of the complaint, counsel for the parties exchanged a series

4          of letters and emails regarding the dispute and the possibility of settlement.

5          (Smith Decl. [Dock. # 37-1] ¶ 2; Pltf.'s Exs. 3, 4, 5, 7; Deft.'s Exs. 3, 4, 5, 6).

6     3.   Mr. Smith was authorized by both Fotona and Lares to negotiate with MDT and

7          settle the dispute on their behalf.  (Smith Decl. [Dock. # 37-1] ¶¶ 2, 13; Hearing

8          Tr. June 7, 2010, 19:16-25)

9     4.   One of the primary issues in contention between the parties from early on in the

10         settlement discussions was whether MDT could use the '997 Patent to exclude

11         Fotona from selling lasers in the U.S. that have a 650 microsecond pulse

12         parameter.  MDT claimed that, by offering and selling lasers in the U.S. that

13         have a 650 microsecond pulse parameter, Fotona was contributorily infringing

14         the claims of the '997 Patent and inducing infringement of those claims.

15         Fotona's counsel disputed this assertion.  (Smith Decl. [Dock. # 37-1] ¶¶ 4, 6-7;

16         Deft.'s Exs. 2-3)

17    5.   In a letter dated July 1, 2009, Erick C. Howard, counsel for MDT, made a

18         settlement proposal, authorized by MDT, that included four points:  (i) Fotona

19         would agree not to promote, teach or practice the LANAP method, (ii) Fotona

20         would inform MDT whether Fotona would be willing to modify the 510(k)

21         clearance to remove the reference to LANAP, (iii) Fotona would immediately

22         remove or disable the 650 microsecond pulse duration parameter from its dental

23         laser products, or pay a royalty-bearing license based on sales of Fotona dental

24         lasers that include this feature, and (iv) Fotona would pay a reasonable royalty

25         based on past sales and reimbursement of MDT's reasonable attorneys' fees.

26         (Smith Decl. [Dock. # 37-1] ¶ 5; Pltf.'s Ex. 3)

27    6.   On July 10, 2009, Fotona submitted an amendment to its 510(k) clearance, in

28         which it requested that the FDA remove the reference to LANAP.  (Hearing Tr.

2

1              June 9, 2010, 9:2-10; Deft.'s Ex. 13)

7.    Steven L. Smith, Fotona's counsel, responded by letter on July 30, 2009 to Mr. Howard's July 1, 2009 letter. In his letter, Mr. Smith stated that "[t]he claims of the '997 do not cover [a 650 microsecond pulse] width nor does the specification support such a claim. Therefore, there can be no liability for infringement for using a 650 pulse *as a matter of law*." (Pltf.'s Ex. 4)

8.    In the same letter, Mr. Smith also noted that (1) "[l]asers that provide 650 microsecond pulse widths and procedures that use such pulse durations had been available before the LANAP procedure was invented and more than one year before the filing date of the '997 Patent," (2) there were substantial non-infringing uses of 600 microsecond and longer pulses, and (iii) "[n]either Fotona nor Lares have advertised or promoted their lasers in conjunction with the LANAP procedure and do not intend to do so in the future." (Pltf.'s Ex. 4)

9.    Mr. Smith stated that he believed that it was "still possible to bring this matter to a conclusion before the August 10, 2009 deadline to file a responsive pleading." He further stated: "Neither Fotona nor Lares are interested in the LANAP procedure or referring to the procedure in their advertising. Neither Fotona nor Lares have advertised or promoted their lasers in conjunction with the LANAP procedure and do not intend to do so in the future. . . . Fotona has taken steps to remove the reference to the procedure in the recent 510(k) as an expression of good faith." (Pltf.'s Ex. 4)

10.    On August 17, 2009, Mr. Smith, responding to a request from Mr. Howard, identified a variety of Lares and Fotona lasers that have microsecond pulse parameters in the 600-700 range, and stated when Lares or Fotona began selling these lasers in the United States. Mr. Smith also informed Mr. Howard that "[t]he 600 microsecond pulse duration is . . . not a new parameter for Fotona's lasers," and that "[f]uture software upgrades and product configurations are likely to utilize pulse durations within this range as well." (Pltf.'s Ex. 5)

11.  On August 24, 2009, the parties stipulated to and received an extension of time for Fotona to file a responsive pleading by no later than September 30, 2009. The Court indicated that no further continuances would be granted. (Pltf.'s Ex. 6)

12.  On September 11, 2009, Mr. Howard sent Mr. Smith another letter, in which he indicated that MDT continued "to have grave concerns about Fotona's continued supply of lasers with a 650 microsecond pulse duration to Lares Research . . . ." Mr. Howard further stated that "MDT is willing to settle this matter if Fotona will agree to remove or disable the 'upgraded' microsecond pulse duration parameter from the PowerLase AT or any other dental laser product it supplies to Lares." (Pltf.'s Ex. 7)

**B.   Fotona's September 25, 2009 Settlement Offer**

13.  On September 25, 2009, Mr. Smith sent Mr. Howard a letter containing a settlement offer from Fotona and Lares. (Deft.'s Ex. 3)

14.  In his letter, Mr. Smith stated that MDT's continued pursuit of its claims against Fotona would likely result in the invalidation of the '997 patent by the Court and the payment of damages to Fotona for patent misuse and antitrust by MDT. (Deft.'s Ex. 3)

15.  Mr. Smith then stated: "[I]n an effort to bring the matter to a conclusion sensibly, Fotona and Lares make the following offer:

   1) Fotona will remove the reference to LANAP from its 510(k) clearances.

   2) A written agreement from Lares not to promote use of the PowerLase for the performance of LANAP during the life of the patent.

   3) A letter from Lares to sales representatives or distributors instructing them not to train PowerLase owners to perform LANAP, or tell prospects or customers they can, may or

4

1                               should perform LANAP with the PowerLase, in writing,

2                               verbally, or otherwise.

3                        4)  A commitment by Lares to immediately take corrective

4                               action if there is any evidence of any reference of the

5                               LANAP procedure in its promotions.

6                        5)  Mutual settlement and release with each party to bear its

7                               own costs and attorneys fees."

8          (Deft.'s Ex. 3)

9       16.   Mr. Smith's offer constituted an offer to settle the case, and was understood as

10           such by MDT and its counsel.  (Hearing Tr. June 9, 2010, 35:20-25; 55:4-19)

11      17.   The settlement offer set forth in Mr. Smith's September 25, 2009 letter did not

12           include any terms relating to any specific pulse parameter or range of pulse

13           parameters.  (Smith Decl. [Dock. # 37-1] ¶ 8; Deft.'s Ex. 3)

14      18.   On or around September 28, 2009, Mr. Howard sent Mr. Smith's September 25,

15           2009 letter to Robert Gregg, the President and Chairman of the Board of MDT,

16           and Mark Monaghan, the Chief Executive Officer of MDT, for their review.

17           (Hearing Tr. June 9, 2010, 103:12-104:2)

18      19.   On September 28, 2009, Mr. Howard sent Mr. Smith an email stating that "our

19           client is reviewing" Mr. Smith's September 25, 2009 letter.  (Pltf.'s Ex. 9)

20      20.   On September 29, 2009, Mr. Howard sent Mr. Smith another email, this one

21           stating that he still needed to discuss Mr. Smith's September 25, 2009 letter

22           with MDT and it appeared the parties would have to "move forward for now"

23           in terms of Fotona filing a responsive pleading.  Mr. Howard also stated: "I still

24           need to discuss your latest letter with MDT to determine its position."  (Pltf.'s

25           Ex. 11)

26      21.   On September 29, 2009, Mr. Smith sent Mr. Howard an email expressing

27           disappointment that MDT had chosen not to settle, and stating that Fotona

28           would file a responsive pleading the next day.  Mr. Smith's letter also stated

that Fotona and Lares' September 25, 2009 settlement offer would terminate once Fotona filed a responsive pleading. (Hearing Tr. June 9, 2010, 105:25-106:13; Pltf.'s Ex. 11)

22. Mr. Howard forwarded Mr. Smith's September 29, 2009 email to Dr. Gregg and Mr. Monaghan. (Hearing Tr. June 9, 2010, 105:25-106:13)

**C. MDT's Discussions concerning Fotona's September 25, 2009 Settlement Offer**

23. On the morning of September 30, 2009, Mr. Howard and Mr. Monaghan discussed Fotona and Lares' settlement offer. (Hearing Tr. June 9, 2010, 104:11-20)

24. During their September 30, 2009 conversation, Mr. Howard and Mr. Monaghan discussed the potential risks to MDT if Fotona were to file its answer and counterclaims that day. Mr. Howard discussed with Mr. Monaghan the risk of Fotona attacking the validity of the '997 patent in Fotona's counterclaim. (Hearing Tr. June 9, 2010, 105:17-24)

25. Mr. Monaghan and Mr. Smith also discussed the settlement terms proposed by Fotona and Lares. Mr. Monaghan told Mr. Howard that the settlement proposal terms in Mr. Smith's September 25, 2009 letter "looked good" but that he had two concerns regarding the proposal, relating to a periodic notice provision and corrective action by Fotona and Lares with regards to compliance. (Hearing Tr. June 9, 2010, 56:1-16, 108:22-109:7)

26. Mr. Monaghan authorized and instructed Mr. Howard to make a counteroffer to Fotona and Lares on behalf of MDT, pursuant to which MDT would accept Fotona's and Lares' proposal on the condition that they agreed to a periodic notice provision and corrective action by Fotona and Lares with regards to compliance. (Hearing Tr. June 9, 2010, 109:17-24, 111:6-112:13)

27. Dr. Gregg as well as Mr. Monaghan agreed to make this counteroffer, and Mr. Monaghan told Mr. Howard that Dr. Gregg had agreed to this counteroffer. Mr. Monaghan never told Mr. Howard that a settlement would not be binding until

1    it was put in writing. (Hearing Tr. June 9, 2010, 105:8-12; Hearing Tr. June 10,

2    2010, 14:11-20)

3    **D.   September 30, 2009 Settlement Between MDT and Fotona**

4    28.   Shortly thereafter, during the morning of September 30, 2009, Mr. Howard

5    initiated a phone conversation with Mr. Smith. (Hearing Tr. June 9, 2010,

6    110:10-12; Supp. Smith Decl. [Dock. # 41-1] ¶ 3)

7    29.   During their September 30 discussion, Mr. Howard told Mr. Smith that Fotona

8    and Lares' terms as outlined in Mr. Smith's September 25, 2009 letter

9    "look[ed] good" and that MDT would agree to Fotona's and Lares' September

10   25, 2009 settlement offer if Fotona and Lares agreed to two minor changes.

11   (Supp. Smith Decl. [Dock. # 41-1] ¶ 3; Hearing Tr. June 7, 2010, 7:14-25, 18:1-

12   16; Hearing Tr. June 9, 2010, 111:6-23)

13   30.   First, Mr. Howard said that MDT was concerned that the new sales

14   representatives of Lares or Fotona would not know that they were prohibited

15   from telling customers that they could perform LANAP with Fotona lasers.  As

16   a result, Mr. Howard said that MDT wanted the settlement terms to reflect that

17   new representatives must be notified of this prohibition. Mr. Howard suggested

18   that a possible method to accomplish this would be for Lares to send a letter or

19   email every six months to notify new sales representatives. (Supp. Smith Decl.

20   [Dock. # 41-1] ¶ 3; Hearing Tr. June 9, 2010, 111:24-112:5)

21   31.   Mr. Howard then said that a second issue that his client was concerned about

22   was that MDT wanted the settlement terms to provide that Lares and Fotona

23   were obligated to take corrective action if they proactively found evidence of

24   any reference to the LANAP procedure in their promotional materials.  (Supp.

25   Smith Decl. [Dock. # 41-1] ¶ 3; Hearing Tr. June 9, 2010, 111:24-113:1).

26   32.   After Mr. Howard described MDT's concerns to Mr. Smith, Mr. Smith

27   informed Mr. Howard that MDT's proposed revisions to Fotona's offer were

28   acceptable. Mr. Smith thereby accepted Mr. Howard's counteroffer in the June

7

1   course of this discussion. (Supp. Smith Decl. [Dock. # 41-1] ¶ 3; Hearing Tr.

2   7, 2010, 18:17-21, 19:2-13; Hearing Tr. June 10, 2010, 39:10-23)

3   33.   Mr. Howard testified at the hearing that Mr. Smith did not accept the two

4         revisions proposed by Mr. Howard.  (Hearing Tr. June 10, 2010, 112:14-

5         113:15, 115:11-117:8, 118:3-9)  In light of the evidence, including Mr. Smith's

6         September 30, 2009 letter memorializing the settlement, the Notice of

7         Settlement filed by Mr. Howard on September 30, the lack of any response by

8         Mr. Howard to the statements in Mr. Smith's letter or the Court's dismissal of

9         the case, Mr. Smith's contrary testimony and the Court's evaluation of the

10        demeanor of the witnesses, the Court finds Mr. Howard's testimony not to be

11        credible.  (Pltf.'s Exs. 13-15, Hearing Tr. June 7, 2010, 7:14-25, 18:17-21,

12        19:2-13; Hearing Tr. June 9, 2010, 129:4-19; Hearing Tr. June 10, 2010, 39:10-

13        23, 78:21-79:2; Supp. Smith Decl. [Dock. # 41-1] ¶ 3)

14   34.   The terms of the settlement agreed to by the parties were as follows:

15            (1)   Fotona will remove the reference to LANAP from its 510 (k)

16                  clearances.

17            (2)   A written agreement from Lares not to promote the use of the

18                  PowerLase for the performance of LANAP during the life of the

19                  patent.

20            (3)   A letter from Lares to sales representatives or distributors

21                  instructing them not to train PowerLase owners to perform

22                  LANAP, or tell prospects or customers that they could, may or

23                  should perform LANAP with the PowerLase, in writing, verbally

24                  or otherwise, with a letter or email every six months or some other

25                  method used to ensure that new sales representatives are advised.

26            (4)   A commitment by Lares to immediately take corrective action if

27                  there is any evidence of any reference to the LANAP procedure in

28                  its promotions that Lares or Fotona proactively finds or is brought

8

1      to its attention in the future.

2                (5)    Mutual settlement and release with each party to bear its own

3                       costs and attorneys fees.

4      (Smith Decl. [Dock. # 37-1] ¶ 12; Supp. Smith Decl. [Dock. # 41-1] ¶ 9; Pltf.'s

5      Ex. 15)

6  35.  Dr. Gregg testified that the 650 microsecond pulse parameter issue was MDT's

7      biggest concern, and that MDT would not have entered into a settlement with

8      Fotona that did not address this issue. (Hearing Tr. June 9, 2010, 24:4-7, 25:3-

9      11, 37:3-7, 38:2-7)  The Court finds Dr. Gregg's testimony not to be credible,

10     in light of the testimony of Mr. Howard indicating that neither Dr. Gregg nor

11     Mr. Monaghan raised this issue in any of their discussions with Mr. Howard

12     from September to November 2009.  (Hearing Tr. June 9, 2010, 110:6-9,

13     140:15-21, 141:25-142:10, 143:13-24; Hearing Tr. June 10, 2010, 110:6-14)

14  36.  The counteroffer made by Mr. Howard to Mr. Smith did not include any term

15     or provision related to the 650 microsecond pulse parameter.  Neither the

16     written communications pursuant to the final settlement nor the draft settlement

17     documents produced by Mr. Howard contain any reference to a 650

18     microsecond pulse width because it was not a term of the final settlement

19     reached between the parties.  As of September 30, 2009, Mr. Howard

20     understood that Fotona was not going to agree to and had not agreed to remove

21     the 650 microsecond pulse parameter capability from its lasers, and he never

22     said anything to Mr. Smith that suggested that the 650 microsecond pulse issue

23     had been unintentionally omitted from the settlement agreement.  (Smith Decl.

24     [Dock. # 37-1] ¶ 24; Supp. Smith Decl. [Dock. # 41-1] ¶ 9; Deft.'s Ex. 3;

25     Hearing Tr. June 9, 2010, 110:6-9, 144:9-13)

26  37.  MDT, through the testimony of Dr. Gregg, suggests that MDT did not include a

27     provision directed to the pulse parameter of the Fotona and Lares lasers because

28     Fotona (through Mr. Smith) misled it into believing that the pulse parameter of

the lasers was no longer in dispute, by representing that Fotona and Lares had already and permanently stopped using the 650 microsecond pulse parameter. (Hearing Tr. June 9, 2010, 95:11-99:15; Supp. Smith Decl. [Dock. # 41-1] ¶ 10) The Court finds that this testimony is not credible, and that no such representation was made, in light of the contemporaneous correspondence between counsel, the testimony of Mr. Howard and the testimony of Mr. Smith. In particular, the Court finds that no reasonable person could have believed that Fotona and Lares had discontinued sales of lasers including a 650 microsecond pulse parameter in light of the statements in Mr. Smith's August 17, 2009 letter to Mr. Howard directly contradicting Dr. Gregg's testimony. (Pltf.'s Ex. 5; Supp. Smith Decl. [Dock. # 41-1] ¶ 10)  Dr. Gregg admitted in his testimony that he had received and read Mr. Smith's August 17, 2009 letter at about the time it was received.  (Hearing Tr. June 9, 2010, 22:10-21)

38.   At no time during the settlement discussions, including the conversation which took place on September 30, 2009, did Fotona represent through its counsel or otherwise that Fotona and Lares had permanently discontinued their use of the 650 microsecond pulse parameter in their lasers.  To the contrary, in correspondence with MDT's counsel, Mr. Smith consistently and repeatedly stated Fotona's position that MDT's attempts to preclude Fotona from offering and selling lasers that have the 650 microsecond pulse parameter were without merit.  (Supp. Smith Decl. [Dock. # 41-1] ¶ 10; Hearing Tr. June 9, 2010, 146:21-148:4)

39.   Mr. Smith then told Mr. Howard during their settlement discussion on September 30, 2009, that based on the results of their discussion, Fotona would

40.   not file its responsive pleading that was due that day. (Supp. Smith Decl. [Dock. # 41-1] ¶ 3; Hearing Tr. June 9, 2010, 114:15-20)

41.   Mr. Howard then said that he would dismiss the action without prejudice in order to take the pressure off while the parties worked out the details of the

1    settlement.  (Hearing Tr. June 9, 2010, 4:20-5:2)

2    42.   In addition, Mr. Howard said that he would notify the Court that the case had

3          settled.  Mr. Howard did not suggest to Mr. Smith that the case might

4          potentially resume despite the filing of a notice of settlement, and said nothing

5          to suggest to Mr. Smith that he thought it would be proper to file a Notice of

6          Settlement stating that the case had settled if in fact it had not settled.  (Supp.

7          Smith Decl. [Dock. # 41-1] ¶ 4; Hearing Tr. June 9, 2010, 121:13-21, 124:12-

8          15; June 10, 2010, 39:20-23)

9    43.   Mr. Smith concluded the call by telling Mr. Howard that he was glad that the

10         parties were able to settle the matter informally and that it was in everyone's

11         best interest to settle.  Mr. Howard did not respond with any indication that he

12         thought the case had not settled.  (Supp. Smith Decl. [Dock. # 41-1] ¶ 3)

13   44.   Mr. Smith understood that both parties intended to be bound by the agreement

14         that they reached on September 30, 2009.  At all times during the pendency of

15         the case, including the conversation on September 30, 2009, Mr. Howard

16         presented himself as having the authority to settle the case on MDT's behalf.

17         Mr. Howard never told Mr. Smith or any other counsel, employee or officer for

18         Fotona or Lares, either during the September 30 discussion or in any other

19         communication, that he did not have authority to settle the case, or that Dr.

20         Gregg had exclusive authority to agree to a settlement that would be binding on

21         MDT.  (Supp. Smith Decl. [Dock. # 41-1] ¶¶ 3, 5, 9; Hearing Tr. June 7, 2010,

22         19:20-25; Hearing Tr. June 9, 2010, 100:6-18; Pltf.'s Ex. 30)

23   45.   During the September 30, 2009 discussion, Mr. Howard never stated or

24         suggested that he had to review the terms of the settlement with MDT again

25         before committing to the agreement that was reached during the discussion.

26         Based on Mr. Howard's prior emails indicating that MDT was reviewing the

27         September 25, 2009 settlement offer as well as Mr. Howard's conduct during

28         and in connection with the September 30 settlement discussion, Mr. Smith

1   understood that Mr. Howard had already reviewed the terms of Fotona's and

2   Lares' offer with MDT, that MDT was actively involved in the settlement

3   process and that Mr. Howard had full authority to make the counteroffer that he

4   made and to settle the case on behalf of MDT. (Supp. Smith Decl. [Dock. # 41-

5   1] ¶¶ 3, 5, 9; Hearing Tr. June 7, 2010, 19:20-25, 20:14-21:4, 21:15-22:5;

6   Hearing Tr. June 9, 2010, 100:6-18; Pltf.'s Ex. 30)

7   46.   In his declaration filed in support of MDT's opposition to Fotona's Motion, Mr.

8         Howard states that he communicated to Mr. Smith that any binding settlement

9         agreement would have to be reduced to a writing and that such writing would

10        have to be reviewed, approved and signed by MDT. (Howard Decl. [Dock.

11        #39-1] ¶ 3) The Court finds Mr. Howard's declaration testimony not to be

12        credible. In his live testimony during the hearing, Mr. Howard admitted that he

13        did not in fact make such a statement to Mr. Smith or any other counsel for

14        Fotona. (Hearing Tr. June 9, 2010, 121:13-122:3)

15  47.   The parties understood that a settlement was reached on September 30, 2009.

16        (Hearing Tr. June 9, 2010, 7:13-8:5) The settlement was not contingent on the

17        production of a signed settlement document, and such a term was not part of the

18        negotiations or written communications between the attorneys or present in the

19        settlement drafts later produced by MDT's counsel. Mr. Howard did not

20        suggest to Mr. Smith that there was no settlement between the parties until the

21        formal settlement documents were finalized and his actions led Mr. Smith to

22        believe the opposite. (Supp. Smith Decl. [Dock. # 41-1] ¶ 13; Hearing Tr. June

23        7, 2010, 7:14-25)

24  48.   Settlement negotiations closed on September 30, 2009, and the settlement was

25        to be formalized in writing. MDT itself took the first step of formalizing the

26        settlement by producing the initial drafts. The exchanges regarding the

27        language of the documents were not settlement negotiations, but rather part of

28        the process of reducing the existing settlement to writing. (Supp. Smith Decl.

1    [Dock. # 41-1] ¶ 13; Hearing Tr. June 7, 2010, 7:14-25, 12:3-13, 17:1-8)

2    49.   Mr. Howard did not tell Mr. Smith that in order to be binding, the parties'

3          settlement had to be reduced to writing, or that it would have to be reviewed,

4          approved and signed by MDT.  Neither MDT nor Mr. Howard ever suggested

5          to Mr. Smith that Mr. Howard did not have full and effective authority to enter

6          into a settlement on behalf of MDT.  Mr. Smith would not have represented to

7          the Court in the Notice of Settlement that the case had settled if Mr. Howard

8          had not represented that Fotona's offer was accepted according to the terms that

9          were confirmed, and that therefore the action had settled.  (Supp. Smith Decl.

10         [Dock. # 41-1] ¶¶ 5-6, 8; Hearing Tr. June 9, 2010, 121:13-122:3)

11   50.   Fotona relied on Mr. Howard's representations that the case had settled.  Fotona

12         did not file its answer and counterclaims on September 30, 2009, the deadline

13         provided by the Court.  (Hearing Tr. June 7, 2010, 14:2-4) At the time Mr.

14         Howard had called Mr. Smith on September 30, 2009, Mr. Smith had in fact

15         been in the process of working on Fotona's answer and counterclaims to get

16         them filed that day.  (Supp. Smith Decl. [Dock. # 41-1] ¶ 3)  If Mr. Howard had

17         said or done anything to suggest that the case had not settled, or if Mr. Smith

18         had for some other reason believed that settlement negotiations were to

19         continue after September 30, 2009, he would have filed Fotona's answer and

20         counterclaims that day in compliance with the Court's order.  (Supp. Smith

21         Decl. [Dock. # 41-1] ¶ 7)

22   51.   At no time following the settlement on September 30, 2009, did Mr. Howard

23         inform Mr. Smith that MDT had concerns about the completeness of the

24         settlement or about any understanding on MDT's part that the settlement would

25         not be final and binding until a written agreement had been executed.  (Smith

26         Decl. [Dock. # 37-1] ¶ 24)

27   **E.   Memorialization of September 30, 2009 Settlement and Post-Settlement Filings**

28   52.   After Mr. Howard and Mr. Smith's phone conversation on September 30, 2009,

1           Mr. Howard sent Dr. Gregg and Mr. Monaghan an email informing them that

2           his conversation with Mr. Smith "went well" and that "everything looks good."

3           (Hearing Tr. June 9, 2010, 122:8-123:1)

4     53.   Mr. Howard also had a discussion with Dr. Gregg in which he informed Dr.

5           Gregg that he intended to file a notice of settlement on MDT's behalf.  (Hearing

6           Tr. June 9, 2010, 40:3-5)

7     54.   On September 30, 2009, Mr. Howard sent Mr. Smith a draft Notice of

8           Settlement for review.  The Notice of Settlement, drafted by Mr. Howard on

9           behalf of MDT, stated that the parties "have settled the above-captioned

10          matter," and that "[i]n the event a dispute between the Parties should arise

11          concerning the interpretation or meaning of any portion of this Agreement, the

12          Parties, through the undersigned counsel, shall promptly meet and confer in an

13          effort to resolve the dispute."  (Hearing Tr. June 9, 2010, 5:25-6:6, 58:17-59:17;

14          Pltf's Exs. 12-13)

15     55.   Mr. Smith made no revisions to the Notice of Settlement.  He believed that the

16          case had settled when he signed the Notice of Settlement, and he would not

17          have signed the Notice of Settlement or represented that to the Court if he had

18          not believed that the case had in fact settled.  Mr. Smith understood that the

19          notice of settlement reflected the fact that the parties had settled the case.

20          (Supp. Smith Decl. [Dock. # 41-1] ¶ 8; Hearing Tr. June 7, 2010, 14:22-15:12;

21          Hearing Tr. June 9, 2010, 60:19-21)

22     56.   Mr. Smith then sent Mr. Howard an email attaching (1) the signed Notice of

23          Settlement and (2) a letter confirming that the parties had settled the case.  Mr.

24          Smith also sent the same letter to Mr. Howard by mail the same day.  (Hearing

25          Tr. June 10, 2010, 7:22-8:5, 9:9-14; Deft.'s Ex. 33)

26     57.   Mr. Howard received Mr. Smith's email containing the two attachments (the

27          signed Notice of Settlement and Mr. Smith's letter confirming settlement) on

28          September 30, 2009 at 2:58 p.m. (Hearing Tr. June 10, 2010, 5:19-25, 7:10-21;

Deft.'s Ex. 33)

58.  Mr. Smith's September 30, 2009 letter stated that the parties had agreed to the following terms:

(1)  Fotona will remove the reference to LANAP from its 510 (k) clearances.

(2)  A written agreement from Lares not to promote the use of the PowerLase for the performance of LANAP during the life of the patent.

(3)  A letter from Lares to sales representatives or distributors instructing them not to train PowerLase owners to perform LANAP, or tell prospects or customers that they could, may or should perform LANAP with the PowerLase, in writing, verbally or otherwise.  (*A letter or email every six months or some other method used to ensure that new sales representatives are advised.*)

(4)  A commitment by Lares to immediately take corrective action if there is any evidence of any reference of (sic) the LANAP procedure in its promotions that (*Lares or Fotona proactively finds or is brought to its attention in the future*).

(5)  Mutual settlement and release with each party to bear its own costs and attorneys fees.  (Pltf.'s Ex. 15)

59.  The letter also stated that the mutual settlement and release would include "the typical protections" for the parties. (Pltf.'s Ex. 15)

60.  Mr. Smith's September 30, 2009 letter accurately memorialized the complete settlement agreement between the parties that Mr. Howard and Mr. Smith had come to during their phone conversation on September 30, 2009.  The italicized text in parentheses reflected the two additional points that Mr. Howard had raised and Mr. Smith had agreed to during the September 30, 2009 settlement discussion. (Hearing Tr. June 9, 2010, 126:2-128:12; Pltf.'s Ex. 15)

61. The letter confirmed that Mr. Howard had agreed to dismiss the action without prejudice in order to take the pressure off the parties while they finalized the settlement language, or alternatively, that the parties would file a notification of settlement. (Pltf.'s Ex. 15)

62. The final paragraph of Mr. Smith's letter requested, "[i]f I have left anything out please let me know as soon as possible." (Pltf.'s Ex. 15)

63. Mr. Howard never responded in any fashion to correct or disagree with anything contained in Mr. Smith's September 30, 2009 letter, or to suggest that any material terms of the parties' settlement had been omitted. (Smith Decl. [Dock. # 37-1] ¶ 15; Hearing Tr. June 9, 2010, 128:24-129:8, 129:15-19; Hearing Tr. June 10, 2010, 11:1-14)

64. During the hearing, Mr. Howard testified that he did not "correct" Mr. Smith's statement that the parties had agreed upon the identified terms because he did not receive Mr. Smith's letter until October 1, 2009, after he had received the Court's Order dismissing the suit. The Court finds this testimony not to be credible. The contemporaneous evidence, principally the email to which Mr. Smith's letter was attached, demonstrates that Mr. Howard received Mr. Smith's letter at 2:58 p.m. on September 30, 2009, prior to the filing of the Notice of Settlement and well in advance of the entry of the Court's Order dismissing the case. Mr. Howard subsequently conceded that he had given incorrect testimony regarding the date he received Mr. Smith's letter and his purported reason for not responding to correct purported inaccuracies in this letter. (Hearing Tr. June 9, 2010, 124:22-125:3 Hearing Tr. June 10, 2010, 7:10-9:2, 10:2-13)

65. On September 30, 2009, Mr. Howard filed the Notice of Settlement and Request to Withdraw Action from Trial Calendar and Stay Proceedings, stating that the parties "have settled" the case, as well as a Proposed Order. The Notice of Settlement reflected the parties' mutual intention, and understanding, that

16

1    they had settled the case.  (Pltf.'s Ex. 13; Hearing Tr. June 7, 2010, 16:7-20,

2    17:1-8)

3    66.   On October 1, 2009, this Court signed an Order of Dismissal stating that the

4          Court had "been advised by the counsel for the parties that the above-entitled

5          action has been settled" and dismissed the case on that basis, allowing the

6          parties 60 days to consummate the settlement that the parties had agreed upon.

7          (Pltf.'s Ex. 14)  The Court finds that if MDT or its counsel had not understood

8          that MDT had settled its dispute with Fotona, MDT would not have drafted an

9          Order of Dismissal for the Court stating that the parties had settled, or would at

10         least have corrected or objected to the dismissal.

11   67.   On October 16, 2009, Mr. Smith sent Mr. Howard a letter stating, in part, "This

12         letter follows my letter of September 30, 2009 confirming settlement of the

13         Millennium v. Fotona case." (Pltf.'s Ex. 16; Hearing Tr. June 10, 2010, 11:18-

14         12:6)

15   68.   On October 19, 2009, Mr. Howard sent Mr. Smith an email stating that he

16         would send a draft Settlement Agreement to Mr. Smith in a few days. Neither

17         in this email, nor in subsequent communications, did Mr. Howard dispute Mr.

18         Smith's assertion that the case had settled.  (Pltf.'s Ex. 17; Hearing Tr. June 10,

19         2010, 12:21-13:13, 14:4-10)

20   69.   On November 25, 2009, MDT and Fotona filed a Request to Extend Time to

21         Complete Settlement ("Request to Extend Time"), which stated that "the

22         Parties are in the process of memorializing their settlement in a written

23         instrument." Mr. Howard drafted the Request to Extend Time, and he believed

24         the above statement to be true when he drafted, signed and filed it.  Mr. Smith

25         also believed that the parties had settled the case and were merely

26         memorializing their settlement.  (Pltf.'s Ex. 18, Hearing Tr. June 9, 2010,

27         137:9-138:4, 138:23-139:4; Smith. Decl. [Dock. #37-1] ¶ 14)

28   70.   In the Request to Extend Time, MDT's counsel represented to the Court that a

17

principle of MDT – apparently Dr. Gregg – was personally involved in the process of completing the parties' settlement agreement: "One of the reasons cited by Mr. Howard in the November 25, 2009 Request to Extend Time to Complete Settlement was that "a principal of Plaintiff has had to be away addressing a significant family medical situation since the filing of the Notice of Settlement and has been unavailable to assist in completing the parties' settlement agreement." (Pltf.'s Ex. 18)

71.  Dr. Gregg states in his declaration in support of MDT's Opposition to Fotona's Motion that he did not review any drafts of the settlement documents prepared and sent by Mr. Howard to Mr. Smith on December 1, 2009 until after they had been sent to Mr. Smith.  (Gregg Decl. [Dock. # 39-2] ¶ 13)  The Court finds Dr. Gregg's declaration testimony not to be credible, in light of the contrary testimony of Mr. Howard.  (Hearing Tr. June 9, 2010, 139:19-140:2)

72.   In November, Mr. Howard had discussions with Dr. Gregg and Mr. Monaghan regarding the drafts of the Settlement Agreements that he was preparing.  Mr. Howard sent them copies of the drafts for their review, and they provided him with comments regarding the drafts. The drafts prepared by Mr. Howard did not contain any provision precluding either Fotona or Lares from selling or offering to sell lasers having a 650 microsecond pulse parameter or any other pulse parameter.  (Hearing Tr. June 9, 2010, 139:19-140:14)

73.  Mr. Howard modified the drafts to incorporate Dr. Gregg and Mr. Monaghan's comments.  Neither Dr. Gregg nor Mr. Monaghan told Mr. Howard to add any provisions to his drafts regarding a 650 microsecond pulse parameter.  (Hearing Tr. June 9, 2010, 140:15-21, 142:6-10, 142:18-20)

74.  On December 1, 2009, Mr. Howard emailed Mr. Smith separate draft Settlement Agreements for Fotona and Lares.  These drafts were authorized by MDT, and fully incorporated the comments that Mr. Howard had received from Dr. Gregg and Mr. Monaghan.  (Supp. Smith Decl. [Dock. # 41-1] ¶ 11;

Hearing Tr. June 9, 2010, 142:24-143:8; Pltf.'s Ex. 20)

75. All of the terms which the parties had discussed in their September 30, 2009 conversation and that were listed in Mr. Smith's September 30, 2009 letter, were contained in Mr. Howard's December 1, 2009 drafts of the Settlement Agreements. (Hearing Tr. June 10, 2010, 24:19-25:7; Pltf.'s Ex. 20)

76. On December 23, 2009, Mr. Smith emailed Mr. Howard revised redlined Settlement Agreements. (Pltf.'s Ex. 22)

77. Mr. Smith's December 23, 2009 revised drafts of the Settlement Agreements accurately incorporated the material terms of the parties' September 30, 2009 settlement, and are in all other respects consistent with the parties' settlement. (Smith Decl. [Dock. # 37-1] ¶ 25; Hearing Tr. June 10, 2010, 15:18-16:1)

78. Neither Mr. Howard's December 1, 2009 drafts of the Settlement Agreements, nor Mr. Smith's revised drafts, contained any provision precluding either Fotona or Lares from selling or offering to sell lasers having a 650 microsecond pulse parameter or any other pulse parameter. (Pltf.'s Exs. 20, 22)

79. The September 30, 2009 settlement contemplated that the parties would negotiate and sign formal documents reflecting the terms agreed upon on September 30, 2009. The exchange of drafts of the written settlement documents between the parties in December 2009 did not constitute settlement negotiations, but were merely part of the process of reducing the existing settlement to writing. (Supp. Smith Decl. [Dock. # 41-1] ¶ 13; Pltf.'s Ex. 15)

80. Mr. Howard and Dr. Gregg had a conference call between December 23, 2009 and December 31, 2009, during which they discussed Mr. Smith's revised drafts. (Hearing Tr. June 9, 2010, 146:1-15)

81. On December 29, 2009, Mr. Howard instructed his secretary to email to Mr. Smith a Stipulation and [Proposed] Order to Extend Time to Complete Settlement ("Stipulation") that Mr. Howard had drafted for Mr. Smith's review and signature. (Pltf.'s Ex. 24, Hearing Tr. June 9, 2010, 84:12-85:12)

82. The Stipulation drafted by Mr. Howard stated that "the Parties are in the process of memorializing their settlement in a written instrument." (Pltf.'s Ex. 25)

83. Mr. Howard believed the above statement to be true when he drafted, signed, and later filed the Stipulation, as did Mr. Smith when he authorized his signature to be appended to the Stipulation. (Supp. Smith Decl. [Dock.# 41-1] ¶ 14; Hearing Tr. June 9, 2010, 138:23-139:4)

84. Mr. Smith signed the Stipulation and [Proposed] Order without making any changes and the parties filed it on December 29, 2009. (Pltf.'s Ex. 25, Hearing Tr. June 9, 2010, 85:13-19).

85. On January 4, 2010, the Court signed the Order to Extend Time to Complete Settlement to allow the parties until February 1, 2010 to finish memorializing the settlement. (Pltf.'s Ex. 26)

86. After December 29, 2009, Mr. Howard stopped communicating with Mr. Smith.  Mr. Howard did not communicate any additional changes or send new Settlement Agreement drafts to Mr. Smith or any other counsel for Fotona. (Smith Decl. [Dock. # 37-1] ¶ 25; Hearing Tr. June 9, 2010, 146:6-15)

87. MDT obtained new counsel in January 2010.  Meanwhile, MDT maintained its silence about the status of the settlement documents and the change of legal representation.  (Smith Decl. [Dock. # 37-1] ¶ 26)

88. On or about January 29, 2010, MDT filed a Request to Reopen Action Due to Failure to Consummate Settlement.  (Smith Decl. [Dock. # 37-1] ¶ 27)

89. On February 11, 2010, Mr. Smith sent a letter to Peter J. Gimino, MDT's new counsel, concerning MDT's failure to consummate the settlement agreement. (Smith Decl. [Dock. # 37-1] ¶ 28; Deft.'s Ex. 16)

90. On February 12, 2010, Mr. Gimino responded by letter, asserting that the case had not been settled and that the terms previously proposed were unacceptable to MDT because they did not address the dispute concerning sale of lasers 29;

1     capable of a 650 microsecond pulse parameter. (Smith Decl. [Dock. # 37-1] ¶

2     Deft.'s Ex. 17)

3    91.   In subsequent correspondence, MDT's new counsel reiterated MDT's new

4      position that a final settlement had never been reached, and claimed that there

5      were outstanding issues that the proposed terms had not addressed, specifically

6      the issue of the 650 microsecond pulse width. Fotona's counsel disputed

7      MDT's position, asserting that a settlement had been reached on September 30,

8      2009 and that no provision addressing the 650 microsecond pulse parameter

9      issue had been incorporated into the settlement because this reflected the

10      parties' intent. (Smith Decl. [Dock. # 37-1] ¶¶ 30-32; Deft.'s Exs. 18-20)

11    92.   Any finding of fact to the extent it is a conclusion of law will be deemed a

12      conclusion of law.

13                 **CONCLUSIONS OF LAW**

14    1.   In the Ninth Circuit, a court "has the equitable power to enforce summarily an

15      agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890

16      (9th Cir. 1987).

17    2.   The construction and enforcement of settlement agreements are governed by the

18      principals of local contract law regardless of whether the underlying cause of

19      action is federal. *United Commercial Ins. Serv. Inc. v. Paymaster Corp.*, 962

20      F.2d 853, 856 (9th Cir. 1992).

21    3.   To be enforceable, a settlement agreement must be complete. *Callie*, 829 F.2d

22      at 890.

23    4.   For a settlement agreement to be complete and binding, the parties must have

24      (i) intended to be bound by the agreement, (ii) agreed on its material terms, and

25      (iii) either agreed to the terms of the settlement themselves or authorized their

26      respective counsel to settle the dispute. *See Callie*, 829 F.2d at 890-91; *Harrop*

27      *v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977).

28

5.  Parties' post hoc statements concerning their intent are not controlling. *Brant v. California Dairies*, 4 Cal. 2d 128, 133 (1935).

6.  Whether parties require further assent before being bound to a settlement agreement depends upon the intent of the parties as demonstrated by their words and conduct. *See Beck v. American Health Group Int'l, Inc.*, 211 Cal. App. 3d 1555, 1562 (1989); *In re Pago Pago Aircrash of Jan. 30, 1974*, 637 F.2d 704, 706 (9th Cir. 1981).

7.  The words and conduct of MDT, Fotona and Lares, as well as the authorized words and conduct of their counsel, objectively demonstrate that they intended to be bound by the settlement of this action reached on September 30, 2009.

8.  MDT, Fotona and Lares agreed upon all material terms of the settlement during the telephone call on September 30, 2009, as memorialized in Mr. Smith's September 30, 2009 letter.

9.  Mr. Smith's September 30, 2009 letter memorialized the complete settlement agreement between the parties. The material terms of the parties' settlement were, and are:

    1. Fotona will remove the reference to LANAP from its 510 (k) clearances.

    2. A written agreement from Lares not to promote the use of the PowerLase for the performance of LANAP during the life of the patent.

    3. A letter from Lares to sales representatives or distributors instructing them not to train PowerLase owners to perform LANAP, or tell prospects or customers that they could, may or should perform LANAP with the PowerLase, in writing, verbally or otherwise, with a letter or email every six months or some other method used to ensure that new sales representatives are advised.

4. A commitment by Lares to immediately take corrective action if there is any evidence of any reference to the LANAP procedure in its promotions that Lares or Fotona proactively finds or is brought to its attention in the future.

5. Mutual settlement and release with each party to bear its own costs and attorneys fees.

10. The settlement did not, and does not, include any provision directed to any particular pulse parameter (including but not limited to a 650 microsecond pulse parameter) or range of pulse parameters for any lasers made, used, sold, offered for sale, imported, exported, advertised or marketed by Fotona or Lares.

11. The revised drafts of the settlement agreements prepared by Mr. Smith and sent to Mr. Howard on December 23, 2009 (Pltf.'s Ex. 22) accurately incorporate the material terms of the parties' September 30, 2009 settlement, and are in all other respects consistent with the parties' settlement.

12. MDT, Fotona and Lares agreed to the terms of the settlement and authorized their counsel to settle the lawsuit on their behalf. MDT, through Dr. Gregg and Mr. Monaghan, determined to propose a counteroffer to Mr. Smith's September 25, 2009 letter. MDT, through Mr. Monaghan, authorized Mr. Howard to present MDT's counteroffer on September 30, 2009, and Fotona and Lares accepted that counteroffer through Mr. Smith.

13. This Court's Findings of Fact and Conclusions of Law rest in part on its determinations regarding the credibility of the witnesses. Based on its evaluation of all the evidence presented, including the exhibits, declarations and live testimony, the Court finds that Mr. Smith's testimony was credible, and that Mr. Howard and Dr. Gregg's testimonies were not credible.

14. Any conclusion of law to the extent it is a finding of fact is deemed to be a finding of fact.

///////

1    IT IS ORDERED:

2        1. Defendant's Motion to Enforce Settlement is Granted.

3        2. MDT is ordered to provide a written document in consummation of the settlement on or

4    before November 30, 2010, as set forth herein.

5        3. The Court shall retain jurisdiction to enforce this order of settlement.

6    Dated: September **30** , 2010.

7

8    _____

9                    MANUEL L. REAL
                UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28